UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

John Nunez,

                         Plaintiff,                      07 Civ. 4629

              - against -                   <u>AFFIDAVIT OF</u>
                                                    <u>LAWRENCE LIPMAN</u>
Manhattan Parking System, Inc., Manhattan Parking    <u>IN SUPPORT OF</u>
Group LLC, and Midtown Parking Corp.,                  <u>MOTION TO DISMISS</u>

                        Defendants.

-------------------------------------------------------------------X

STATE OF NEW YORK    )
                              ): ss.:
COUNTY OF NEW YORK  )

           Lawrence Lipman, being duly sworn, deposes and says:

1.  I am the managing member of defendant Manhattan Parking Group, LLC, ("Parking LLC") and the president of Midtown Parking Corp. ("Midtown Parking") I am authorized on behalf of these defendants to provide this Affidavit. I base this Affidavit in Support of the Motion to Dismiss the Complaint upon my personal knowledge of the facts herein. The Motion to Dismiss is based upon the following grounds:

        A.  Failure to state a claim

        B.  Failure to exhaust administrative remedies

        C.  Statute of Limitations

2.  At all times mentioned in the Complaint, plaintiff was an employee of Midtown Parking and was not employed by any other of the defendants. He received salary from Midtown Parking only.

3.  I am informed by counsel that a defendant cannot be held liable under any of the statutes

cited in the Complaint if that defendant did not employ the plaintiff.

4. Plaintiff was employed as a parking garage manager at the 575 Lexington Avenue location beginning in January 1991 until his retirement in April 2007.

5. Midtown Parking fulfilled all of its payment obligations to plaintiff for the time period mentioned in the Complaint.

6. Plaintiff was always paid the appropriate salary given his position at Midtown Parking. His last salary was $629.38 per week for a work week of forty-five hours as of March 2007. A copy of one of his payroll checks is annexed hereto as Exhibit "A".

7. Midtown Parking never acted with any intent to deprive plaintiff of his salary.

8. I am informed by counsel that the absence of intent to deprive plaintiff of overtime compensation is a defense to a complaint seeking damages for willful violation of the Fair Labor Standards Act.

9. I am also informed by counsel that any claims made by plaintiff for overtime pay for more than two years are barred by the Statute of Limitations.

10. Plaintiff was covered by a union contract by and between Garage Employees Union Local 272 and the Metropolitan Parking Association dated March 6, 2004 ("Union Contract"). Plaintiff's job title as a "working manager" was a covered title under the Union Contract.  Midtown Parking is a member of the Metropolitan Parking Association, Inc., a trade association formed by parking garage owners. A copy of the applicable union contract is annexed hereto as Exhibit "B".  Article IV (1) of that Exhibit describes the employees covered by this contract and includes "Working Managers or Working Foremen, Washers, Floormen, Transporters, Cashiers, and all other persons now or hereafter performing one or more of the functions of the said job classifications as hereinafter defined".

11. Under the Union Contract, plaintiff was obligated to bring any and all grievances against

any of the defendants to the attention of the union.

12. Article XX of the Union Contract provides as follows:

" If a dispute, claim, grievance or difference shall arise between the Union and the Employer about the interpretation or application of a particular clause of this Agreement (such dispute, claim, grievance, or difference is hereinafter referred to as a " grievance"), such grievance shall be handled as follows: (a) The party asserting the grievance must submit the grievance, in writing, to the other party within (i) ten (10) days after the occurrence of the incident or event giving rise to the grievance; or (ii) the date the Employee, with reasonable diligence, should have known of the grievance. (b) The Union and the Employer and/or the Association shall meet at the Union office within fifteen (15) calendar days of the date the grievance was submitted….
2.(a) In the event the Union and the Employer and/or the Association fail to meet in a timely manner or meet and fail to resolve the grievance within (20) calendar days of the date the grievance was submitted, either party may submit the grievance to arbitration no later than forty-five (45) days after the grievance was submitted…
3. Failure of the party asserting a grievance to follow this grievance procedure, within the times specified above, shall unless consented to in writing by the other party, be deemed abandonment of the grievance. It is the intent of this provision that all grievances shall be taken up and disposed of promptly and that, unless taken up and followed promptly, shall be considered abandoned by the party asserting such grievance…"

13. Pursuant to Article XX of the Union Contract, the union then had the obligation to bring such grievances to the attention of Midtown Parking so that the grievance procedure could be implemented.

14. I have reviewed all of the employment records for Midtown Parking and have spoken to the appropriate union representatives.

15. At no time during his employment did plaintiff bring any type of grievance concerning alleged overtime work to the attention of his union representative.

16. At no time during his employment did the union file a grievance on behalf of plaintiff with regard to alleged overtime work with any of the defendants.

17. At no time during his employment was I or any other member representing the management of Midtown Parking asked to participate in a grievance procedure regarding an alleged failure to pay overtime compensation to plaintiff.

18. Thus, for the entire time of his employment, plaintiff did not have any grievance

concerning overtime pay which he deemed important enough to bring to the attention of his union representative as he was required to do.

19. By the Union Contract then plaintiff's alleged grievance concerning the supposed failure to pay overtime pay is deemed abandoned.

20. This Complaint is the first time that Midtown Parking or any of the defendants for that matter have been informed by plaintiff that he was deprived of overtime pay for overtime work.

21. I am informed by counsel that failure to file a grievance and/or failure to follow the procedures outlined in the Union Contract indicate that the claims under New York Labor Law are barred.


WHEREFORE, for all of the above reasons, your deponent respectfully requests that the claims in the Complaint under New York Labor Law, the claims in the Complaint alleging willfulness under the Fair Labor Standards Act and any claims seeking compensation beyond the two year Statute of Limitations under the Fair Labor Standards Act should be dismissed with prejudice.


LAWRENCE LIPMAN


Sworn to this 23 rd day

of July, 2007

Notary Public

DAVIDA S. SCHER
Notary Public, State of New York
No. 02SC5055328
Qualified in Westchester County
Commission Expires February 5, 13
2010

# EXHIBIT A



VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

MIDTOWN PARKING CORP
545 5TH AVENUE
NEW YORK, NY  10017

Payroll check number:  0000000453
Pay date:                      04/05/2007

1-108/210

Pay to the
order of:      JOHN J NUNEZ

This amount:   ONE THOUSAND THREE HUNDRED TWENTY TWO AND 76/100 DOLLARS              $1322.76

HSBC BANK, USA
FIFTH AVENUE OFFICE
NEW YORK, NY 10018

AUTHORIZED SIGNATURE

⑈⁰000000453⁰ ⁑021001088⁑ 610822918⁑        ⁑000013227G⁑

THE ORIGINAL DOCUMENT HAS AN ARTIFICIAL WATERMARK ON THE BACK - HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT

F51703413

JPMORGAN CHASE BANK, N.A.
  > 021000021 < POSITION
21000021       2007   5970090417 4828  1
BC BANK USA, N.A.  0000903000079596S  0001238
04/09/07

200379923

# EXHIBIT B

GARAGE
EMPLOYEES
UNION
LOCAL **272**
AND
METROPOLITAN
PARKING
ASSOCIATION



Collective
Bargaining
Agreement

# COLLECTIVE BARGAINING AGREEMENT

# Table of Contents

| | | |
|---|---|---|
| ARTICLE I | Authorization | 3 |
| ARTICLE II | Employment Representation | 3 |
| ARTICLE III | Parties | 5 |
| ARTICLE IV | Recognition of the Union | 7 |
| ARTICLE V | Union Security | 7 |
| ARTICLE VI | Safety & Security | 10 |
| ARTICLE VII | Hiring Hall | 12 |
| ARTICLE VIII | Seniority | 13 |
| ARTICLE IX | Military Service | 14 |
| ARTICLE X | Jury Duty | 14 |
| ARTICLE XI | Union Representatives & Unauthorized Actions | 15 |
| ARTICLE XII | Employees' Security | 15 |
| ARTICLE XIII | Check Off & Teamster Drive | 18 |
| ARTICLE XIV | Wages | 20 |
| ARTICLE XV | Hours and Overtime | 22 |
| ARTICLE XVI | Vacation and Benefit Days | 23 |
| ARTICLE XVII | Job Classification and Duties | 26 |
| ARTICLE XVIII | Protection of Rights and Strikes and Prohibitions | 27 |
| ARTICLE XIX | Discipline | 28 |
| ARTICLE XX | Grievance and Arbitration Procedure | 29 |
| ARTICLE XXI | Welfare Benefits | 31 |
| ARTICLE XXII | Pension & Retirement Plan | 33 |
| ARTICLE XXIII | Management Rights | 35 |
| ARTICLE XXIV | General Provisions | 36 |
| ARTICLE XXV | Non-Discrimination Clause | 36 |
| ARTICLE XXVI | Duration | 37 |
| APPENDIX A | | 39 |

1

# GARAGE EMPLOYEES LOCAL 272

AGREEMENT made as of 12:00 A.M. March 6, 2004, between METRO-POLITAN PARKING ASSOCIATION, INC., herein referred to as the "Association", a party hereto in its own behalf and on behalf of its members, and GARAGE EMPLOYEES UNION LOCAL NO. 272, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO hereinafter referred to as the "Union":

## WITNESSETH:

WHEREAS, the aforesaid Association is composed of various persons, firms, and corporations owning, managing and/or operating Parking Facilities as defined herein; and

WHEREAS, the Union is the collective bargaining agent for the employees employed within such Parking Facilities;

NOW, THEREFORE, in consideration of the mutual terms, conditions and provisions herein set forth, the parties hereto do hereby agree as follows:

# COLLECTIVE BARGAINING AGREEMENT

## ARTICLE I
## Authorization

1  The Association warrants and represents that it is duly authorized to enter into this Agreement for and on behalf of itself and all of its members who have authorized the Association to represent it in collective bargaining with the Union with respect to a Parking Facility, which representation shall include any other Parking Facilities (as defined in Article III, Section 2) owned, operated or managed as part of a multiple unit or chain operation of which the member is a part (herein collectively and individually referred to as the "Employer" or "Employers") and the Union warrants and represents that it is duly authorized to enter into this Agreement for and on behalf of itself and the employees for which it is the recognized exclusive bargaining representative (herein called "Employee" or "Employees"), now and hereafter employed by the Employer.

## ARTICLE II
## Employer Representation

 1  The signatory Association is hereby recognized as the sole collective bargaining representative for the Employers.

 2  Simultaneously with the execution hereof, the Association will provide the Union with a list of such Employers and will keep the same up-to-date.

3  The Association shall notify the Union and Local 272 Welfare & Pension Funds, in writing, as soon as the Association is aware of a change of ownership, management or operation of a Parking Facility heretofore owned, managed or operated by an Employer of which it is aware or of the admission to membership of a prior non-member Employer, in which case such new member shall thereafter be entitled to the rights and privileges and be subject to the terms and conditions of the within Agreement. This shall not operate to reduce the rate of pay or working conditions of the Employees of said unit if they are at that time enjoying a higher rate of pay and better working con-



COLLECTIVE BARGAINING AGREEMENT

within such forty-eight hours the parties are unable to agree on modifications to this Agreement, any Employer may (i) put into effect any such More Favorable Condition and/or (ii) shall be released from the obligation to apply this Agreement to Excluded Job Classifications.

(b) The terms "Other Employer" shall not include any new establishment or location after March 6, 1995 in the Boroughs of Brooklyn, Queens or Staten Island.

(c) Failure on the part of the Association to assert its rights under this Paragraph, whether intentional or as a result of oversight, shall not constitute a waiver of the Associations' right to require enforcement of the Paragraph on other occasions.

(d) The provisions of this Paragraph are made expressly subject to the arbitration provisions contained in Article XX hereof, except that the procedural and time restrictions contained in Article XX shall not apply.

(e) The Union agrees to file with the Association a copy of each collective bargaining agreement it enters into with such Other Employer within thirty (30) days next following the execution of said collective bargaining agreement. Nothing herein shall prevent the Association from requiring the Union to provide the Association with a true copy of such agreement.

## ARTICLE III
# Parties

1  This Agreement shall apply to and be binding upon the Association, the Employers, the Union, the Employees and their respective successors, legal representatives and assigns. No provisions or obligations shall be affected, modified, altered, impaired or changed in any respect by any change in the legal status, ownership or management of the Employer or its business, or any change, geographical or otherwise, in the location of any of the Employers places of business.

2  This Agreement shall apply to and be binding upon the Employer

5

---

GARAGE EMPLOYEES LOCAL 272

ditions. The Employer shall notify the Union, not less than thirty (30) days (or as soon as the Employer is aware) prior to the effective date thereof, of a change in ownership, management or operation of a Parking Facility owned, managed or operated by said Employer.

4  In the event of an Employer's termination of membership in the Association by reason of resignation, expulsion or any other cause, such Employer's liability under this Agreement shall, nevertheless, continue until the expiration hereof. The Association will likewise notify the Union, in writing within twenty-four (24) hours, of the resignation, suspension or expulsion of the Employer member.

5  Each such unit or corporation owning, managing and/or operating a Parking Facility of a multiple unit or chain operation, controlled or managed by the same person or group of stockholders of which an Association member is now or hereafter may be a part, shall be bound by the terms hereof.

6  (a) From and after the effective date hereof, if, from the point of view of the Association and/or any Employer, the Union, whether directly or indirectly, or whether orally or in writing, enters into a contract or agreement with any other employer operating (or employer association whose members operate) parking establishments or locations in (x) the Borough of Manhattan and/or (y) with respect to the other four (4) boroughs of the City of New York, within a six (6) square block radius of the Employer (said other employer or employer association being hereafter referred to as the "Other Employer") which:

(i) grants to the other Employer a more favorable rate of pay, contributions, benefits, hours, working conditions or other terms or conditions of employment than is stated in this Agreement (all of the foregoing being sometimes hereinafter referred to as "More Favorable Condition(s) "); and/or

(ii) does not include all of the job classifications contained in this Agreement (the "Excluded Job Classification(s)") (unless such Excluded Job classifications are already covered in a contract which that employer has with another union), the parties shall meet within forty-eight (48) hours after hand-delivered written notification from the Association to the Union of the Association's intention to invoke the provisions hereof. If

4

**COLLECTIVE BARGAINING AGREEMENT**

## ARTICLE IV

# Recognition of the Union

1   Each Employer recognizes the Union as the sole and exclusive bargaining agent for all Employees of the Employer.

2   Employees for whom the Union is recognized as exclusive bargaining agent are Working Managers or Working Foremen, Washers, Floormen, Transporters, Cashiers and all other persons now or hereafter performing one or more of the functions of the said included job classifications as hereinafter defined.

3   Persons in excluded occupations, when transferred to or performing one (1) or more of the functions of the included job classifications, part-time or full-time, shall be considered Employees, except when such transfer is for emergency circumstances.

4   Every person hereafter doing covered work at each location, including corporate officers or partners, shall be an Employee covered by the provisions hereof, except that each Employer, whether it be an individual, a partnership or a corporation, shall be entitled to one (1) officer or managing partner of such Employer, who may, at the Employer's option, be exempt from the terms of this Agreement.

5   Within fourteen (14) days of a written request, the Employer shall furnish the Union with a list of all its Parking Facilities, Employee names, addresses, social security numbers, job classifications and wage rates and such other information as may be reasonably necessary for contract enforcement and grievance adjustment.

## ARTICLE V

# Union Security

1   The Employer grants to the Union the maximum union security (but not less than the "union shop") permissible under applicable law. This shall be subject to such certification as may be required under applicable law.

2   In the event the Employer assumes the operation of any other garage or parking business that has at that time in force and effect a contract



**GARAGE EMPLOYEES LOCAL 272**

with respect to all Employees of (a) all parking garages owned, operated and/or managed by the Employer, now or in the future, in the boroughs of Manhattan and the Bronx other than garages which are subject to a collective bargaining agreement with a labor organization other than Local 272; (b) all parking garages owned, operated and/or managed, by the Employer as of the effective date of this Agreement in the boroughs of Brooklyn, Queens and Staten Island and Nassau, Suffolk and Westchester Counties other than garages which are subject to a collective bargaining agreement with a labor organization other than Local 272; and (c) any combination parking locations (on which a garage and open parking lot exist on the same site) in the boroughs of Manhattan and the Bronx where Local 272 may obtain status as exclusive collective bargaining representative. All of the above are herein referred to as "Parking Facility" or Parking Facilities".

3   If the Employer shall sell, transfer, or otherwise dispose of its business, or cause it to be merged or consolidated with any other person, firm or corporation, the contract by which such sale, transfer, disposition, merger or consolidation is made shall provide that the person, firm or corporation thereafter to operate the business shall, as of the effective date of closing pursuant to such contract, assume all of the terms and conditions of this Agreement henceforth to be performed, and it shall retain in its employ all Employees then employed in the business.

4   If the Employer acts as managing agent for an owner-operator or lessee of a Parking Facility, the Employer shall be liable as a principal, for all wages, vacation and benefit days and Welfare and Pension Fund contributions due to or for Employees during the period when the Employer acted as managing agent, and all of the terms and conditions of this Agreement shall so apply.

5   The Employer will not enter into individual contracts with any of the Employees subject to the jurisdiction of the Union.

# GARAGE EMPLOYEES LOCAL 272

with the Union which provides for higher rates of pay or better conditions of any kind for the Employees therein covered, so much of such other contract which provides for higher rates of pay or better conditions shall be deemed incorporated herein for such other garage or parking business for the length of such contract or this one, whichever is longer.

3. All present Employees covered by this Agreement who are members of the Union, as a condition of continued employment, shall maintain such membership in good standing in the Union. All present Employees who are not members of the Union shall be required, as a condition of continued employment, to become and remain members in good standing in the Union on or after the thirtieth (30th) day following the execution of this Agreement or its effective date or their date of employment, whichever is later. All Employees thereafter hired shall be required, as a condition of a continued employment, to join and become members of the Union on or after the thirtieth (30th) day of their hiring, and to maintain membership in good standing in the Union. "Good standing," for the purpose of the Agreement, shall mean the payment or tender of periodic dues and initiation fees uniformly required by the Union.

4. The failure of a person to become a member of the Union at the required time shall obligate the Employer, upon written notice from the Union to such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, forthwith to discharge any such person. Further, the failure of any person to maintain his Union membership in good standing as required herein shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to, and it shall forthwith, discharge such person.

It is specifically agreed that the Employer assumes no obligations, financial or otherwise, except those stated in this Paragraph arising out of the provisions of this Paragraph, and the Union hereby agrees that it will indemnify and hold the Employer harmless for any claims, actions or proceedings by any Employer or by any government agency arising from actions taken by the Employer upon notice from the Union hereunder.

5. (a) In the event the Employer commences owning, operating or managing the operation of a parking garage in the boroughs of

# COLLECTIVE BARGAINING AGREEMENT

Manhattan or the Bronx that is not covered by a Union contract, then the provisions of this contract shall immediately take full force and effect.

(b) In the event the Employer commences owning, operating or managing a parking garage in the boroughs of Brooklyn, Queens or Staten Island and Nassau, Suffolk or Westchester Counties that is not covered by a Union contract, the Employer shall be obligated to and shall recognize the Union as the sole collective bargaining representative for the Employees and the parties shall negotiate terms and conditions applicable to that parking garage with due regard for any different economic and business conditions in the geographic location of the parking garage.

(c) In the event the Employer commences owning, operating or managing the operation of a Parking Facility covered by a Local 272 Contract, the contract shall remain in full force and effect and the Employer shall retain all members of Local 272. In the event an Employee doing covered work at such Parking Facility is not a member of Local 272, he shall become a member of Local 272 in accordance with the provisions of this Agreement.

6. This Agreement shall be binding on the purchasers from or transferee of the Employer, whether it involves a single unit of a corporation or company.

7. Subject to and limited by the provisions of this Agreement, the Employer shall have the right to make changes in its method of operation for a valid business purpose. In the event the Employer desires to make any changes, the Employer shall first notify the Union in advance and discuss such desired change(s), with the Union in advance of implementation. If advance notice to, or discussion with, the Union is not possible, discussions concerning the impact of such desired change on Employees shall be held within three (3) business days after the change. Failure to discuss the change with the Union can be grounds for its rescission. Following the parties' discussions, and beforehand in emergency situations, the Employer may implement the desired changes. Nothing in this Paragraph, including the Union's discussion of the change(s) with the Employer, shall operate as a waiver of any of its rights, including seniority, under this Agreement.

8. The Employer will post and agree to keep posted a copy of this Agreement in the location best suited to permit any of its Employees to examine and read the same.

9. In the event the Employer becomes involved in a controversy with any other Union, the Union will use its best efforts to help effect a fair settlement.

10. In the event of any change in the applicable law during the term of this Agreement, this Agreement will be modified to incorporate such change in law and the Union will be entitled to, and will receive, by such change, the maximum union security which may be lawfully permissible.

## ARTICLE VI
# Safety & Security

1. The Employer shall supply and maintain all equipment necessary to the operation of its business or performance by the Employees of their functions therein.

2. All Employees required, as part of their regular job classification and duties, to operate motor vehicles shall, as a condition of their continued employment, keep and maintain a valid operator's or chauffeurs license issued by the State of New York or the state of their residence, if same is other than New York. Such license must be maintained in good standing, retained and made accessible by the Employee at all times when on duty and produced to the Employer for inspection, at the request of the Employer. The failure or refusal of an Employee to comply with the foregoing will subject the Employee to immediate discipline, including discharge, in appropriate cases.

3. All motor vehicles supplied by the Employer for use by the Employees in the performance of their duties on the public streets and highways shall be covered by such insurance as is required by applicable law of the State of New York or rules of the New York State Motor Vehicle Bureau.

4. No Employee shall be required to work under conditions or to oper-

ate a motor vehicle or use equipment, which would be unsafe or hazardous to health.

5. When the Employer requires Employees to wear uniforms, it shall furnish such uniforms to the Employees. Employees shall be responsible for maintaining their uniforms in clean condition. Employees shall return them to the Employer on termination of employment for any reason in clean condition.

6. There shall be established and maintained a Joint Labor Management Committee (the "Safety & Security Committee"), composed of two (2) members, each designated by the Union and the Association respectively, which shall meet as required to address and discuss industry-wide issues of safety and security.

7. The Employer shall indemnify each Employee and defend all litigation against an Employee and hold him/her harmless from any financial loss including the reasonable cost of legal services sustained by him/her by reason of any claim or suit instituted against him/her arising from any act done or omission during the course of his/her employment in connection with the care, maintenance, operation or protection of the property of the Employer or any property entrusted to the Employer or within his/her possession or control. The within indemnity against financial loss, including the cost of legal services, shall not be effective if an Employee shall have been adjudged to have been guilty of willful negligence.

8. The Employer will reimburse an Employee for any established loss suffered by the Employee not to exceed the equivalent of one (1) week's wages upon satisfactory proof that such loss was occasioned by a burglary, robbery or other criminal act during the course of employment without negligence on the part of the particular Employee contributing thereto.

9. The Employer may, in its discretion to determine fitness for initial employment in the industry, require applicants to pass such physical examinations and tests (including, but not limited to, drug and alcohol tests), as such Employer determines is necessary.

10. An Employee who takes, at the direction of a physician, prescription drugs that may cause drowsiness or impair motor skills must notify his Employer before reporting to work.

## ARTICLE VII
# Hiring Hall

**1** Any person, whether a member of the Union or not, may request referral at the Hiring Hall and must be referred to a job in the chronological order of the request.   The Union will maintain a "Referral Register."

**2** A person seeking a referral shall come to the Hiring Hall and sign the Referral Register with his/her name, the date, and union affiliation, if any, together with the hourly wage at which he/she last worked.

**3** All hirings shall be through the Hiring Hall, subject to the following:

(a) Except for those Employees who have been discharged for theft, drunkenness, use of drugs, or material falsification of an employment application, all Employees hired from the Hiring Hall shall receive wages equivalent to the wages received in the position in which they were last employed in the Industry.

(b) An Employer shall notify the Hiring Hall of a vacancy.   The Employer may accept or reject an applicant referred by the Hiring Hall for any reason.   The Employer may after 24 hours from first notifying the Hiring Hall of the vacancy, except in case of a weekend or holiday, hire an Employee from any other source, regardless of whether additional applicants are referred by the Hiring Hall after such 24 hour period.

(c) The Employer shall be required to give the Union written notice of all New Hires no later than thirty (30) days after such New Hire begins work.   If an Employer fails to notify the Union of a New Hire within thirty (30) days of the New Hire's employment, the Employer shall be required to pay to the Local 272 Welfare Fund the sum of $500.00 per New Hire, as liquidated damages, for each full month that the Employer so fails to notify the Union, retroactive to the date of hire.

12

## ARTICLE VIII
# Seniority

**1** The Employer recognized the general principle that senior Employees shall have preference to work at the job for which the pay is highest, provided that such Employee is qualified for such work.

**2** The seniority of any Employee shall mean his/her length of continuous service with his/her Employer.

**3** New Employees shall be on trial for a period of sixty (60) days and, within that period, shall be subject to being laid off or discharged for any reason whatsoever at the sole discretion of the Employer.   After a new Employee has completed his/her trial period, his/her seniority shall govern in the event of a layoff.   In the event of the reduction of the work force, the Employees with the lowest seniority shall be laid off first. In the event of a rehiring, the Employees so laid off (or if transferred to another location in lieu of layoff) shall be offered re-employment in the order of seniority.

**4** In the event of a discharge or layoff which is determined not to have been justified, the Employee so discharged or laid off, if reinstated through grievance procedure, shall not lose his/her seniority and shall, subject to the arbitrator's determination, be entitled to all the benefits of this Agreement and his/her job which would have accrued to him/her had there been no discharge or layoff.

**5** An Employee shall lose his/her seniority status if said Employee quits, voluntarily resigns or is discharged for just cause.

## ARTICLE IX
# Military Service

**1** In the event that an Employee covered by this Agreement is called to active military service in the Armed Forces of the United States, such Employee shall be considered on leave of absence during the period of such service, and shall be entitled to all rights of re-employment,

13

## GARAGE EMPLOYEES LOCAL 272

preservation of status and other benefits as provided by the Selective Service Act of 1948, as amended.

### ARTICLE X
# Jury Duty

1  No Employee shall be laid off, deprived of allowances or pay for vacation or benefit days or suffer diminution of any rights, to which he/she would otherwise be entitled by reason of absence for jury duty.

2  Jury duty will be paid no more than once every two (2) years for all Full-Time Employees who are summoned to serve. Payment shall be the difference between their per diem jury pay and their regular rate of pay, exclusive of carfare reimbursement, where such service occurs on a scheduled work day, provided that such payment shall be made for a period of no more than four (4) weeks (or such shorter period as the Employee shall be on jury duty). In order to receive jury duty pay, an Employee must notify Employer promptly upon receipt of the call for jury duty, provide a copy of such notice or summons to the Employer, present to the Employer written evidence of attendance at jury service and a copy of the receipt for payment of jury duty.

### ARTICLE XI
# Union Representatives & Unauthorized Actions

1  Only a duly authorized officer, official or business representative of the Union may instruct Employees in the proper method of compliance with, or shall interpret for such Employees, the terms of this Agreement.

2  Employees of an Employer have no authority to settle grievances, take strike action or any other action which shall interrupt any

14

## COLLECTIVE BARGAINING AGREEMENT

Employer's business, except as authorized by official action of the Union.

3  Each Employer recognizes these limitations and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event any Employee has taken unauthorized strike action, employed a slow down or work stoppage, or interrupted the Employer's business, in violation of this Agreement and discharge under such circumstances shall be deemed to be for just cause.

4  A duly authorized officer or business representative of the Union, and his automobile, shall be permitted to enter the premises of the Employer during all working hours for the purpose of adjusting complaints or ascertaining whether safety standards are maintained or whether the terms and conditions of this Agreement are being observed.

### ARTICLE XII
# Employees' Security

1  In the event the Employer takes over the operation of a Parking Facility that is under contract with the Union, the Employees therein shall not be considered new Employees by virtue of such new ownership and management, and such Employees shall continue to receive vacation and benefit days and all other rights granted herein, by virtue of seniority in said particular Parking Facility. The successor Employer shall be obligated only for its pro rata share of each Employee's benefit day entitlement.

2  An Employee who has completed the sixty (60) day trial period shall be retained in the same unit and location in which the Employee was hired. Within the limitations prescribed by this Article, an Employee may be transferred for any legitimate business reason.

The Employer shall be required upon request to provide the Union with the business reason justifying the transfer. The legitimacy of a

15

## GARAGE EMPLOYEES LOCAL 272

transfer shall be subject to the grievance procedure under Article XX. The Union shall have the burden of establishing that the Employer does not have a legitimate business reason for the transfer.

Where a transfer is made, except in emergency circumstances, the Employer shall provide the Employee and the Union with one (1) week's advance notice. Where the Employee is transferred due to emergency circumstance, the Employer shall notify the Union as soon as practicable thereafter. Employees transferred shall continue to receive vacation and benefit days and all other rights granted herein by virtue of seniority in the Employee's former place of employment within such multiple unit or chain operation and full company seniority shall prevail at the new location for purposes of layoff, selection of work shifts and vacation and benefit days off.

In the event that an Employee transferred to a new location loses employment at such new location within one hundred fifty (150) days of the date of transfer on account of either the closing of the location or the takeover of the location by an Employer that is not obligated to retain the Employee, such Employee shall have the right within five (5) working days of loss of employment to bump back to the location from which the Employee was transferred without any loss of employment or seniority rights.

Whenever there has been a change in the ownership, management and/or operation of a location (the "Transferred Location") from one Employer ("Outgoing Employer") to another Employer who would be obligated to retain the employees at the Transferred Location pursuant to its collective bargaining agreement with the Union ("Incoming Employer"), then:

(a) any employee who was transferred into the Transferred Location within one hundred fifty (150) days of the effective date of the change in the ownership, management and/or operation of the Transferred Location ("Location Transfer Date") shall be transferred back to the location from which he was transferred without any loss of seniority;

(b) any employee who was transferred out of the Transferred Location within 150 days of the Location Transfer Date and who remains an employee of the Outgoing Employer as of the Location Transfer Date may be transferred back to the

## COLLECTIVE BARGAINING AGREEMENT

Transferred Location without any loss of seniority at the Outgoing Employer's option;

(c) any transfer required by (a) above shall take place within five (5) working days of the Location Transfer Date. The Outgoing Employer shall be responsible and shall be obligated to pay, for any wages or benefits lost by any transferred employee as a result of any delay in effecting the transfers required by (a) above.

3 In the event an Employer fails to pay wages when due or fails for a period of ten (10) days to abide by the requirements of Article XIII (check off), Article XXI (Welfare Benefits) or Article XXII (Pension), the Union shall have the right to call an immediate work stoppage or strike at any or all Parking Facilities of the Employer employing Union members. Notice of such work stoppage or strike shall be given to the Employer no less than forty-eight (48) hours in advance.

The work stoppage or strike shall not occur if, during the notice period, the Employer submits an arbitrable issue for expedited arbitration before one of the named contract arbitrators, if any, or if none, to the American Arbitration Association under its expedited labor arbitration rules. The hearing shall be conducted within ten (10) days from receipt of the demand for arbitration by the arbitrator and the Union. The award shall issue within five (5) business days of the hearing, and shall include provision for the payment by the Employer of costs and fees in favor of the Union if the Employer's position is rejected by the arbitrator.

A strike or work stoppage may commence if the Employer fails to comply with an award in favor of the Union within five (5) days of issuance. The work stoppage or strike may continue until the delinquency is cured. The wages of all Employees shall continue until the delinquency is cured, but such work stoppage or strike shall not be deemed a breach, violation or abandonment of this Agreement and, except as set forth within this subparagraph, shall not be subject to the arbitration procedures hereof.

4 Employees shall have preference to select their work shift according to their seniority and their job classification; provided, in the Employer's judgment, they qualify and a vacancy exists.

5 Employees shall not be held responsible for vehicles not properly



## GARAGE EMPLOYEES LOCAL 272

equipped to comply with New York State Motor Vehicle Laws and shall be compensated for fines and time lost if summoned to court, etc., because of same.

**6**  Any Employee required to appear in court at the request of the Employer, or at the summons of the National Labor Relations Board, as the result of some action taken on behalf of the Employer, shall be paid in full for such time by the Employer. No payment shall be less than a full days' pay, but the Employee shall be available for work if the proceeding does not extend the full day.

**7**  This Agreement shall not, in any way, alter, change, modify or deprive any of the Employees of conditions that they are now enjoying or working under which are better than those specified in this Agreement, and they shall continue to enjoy such better conditions during the life of this Agreement.

**8**  The Employer shall make reasonable attempts to accommodate Employees whose normal duties would require him/her to violate the Sabbath or other religious laws.

**9**  An Employee who is absent from work, as provided herein, shall be entitled to reinstatement by the Employer to the position and seniority held at the time the absence began, provided the Employee returns to work no later than the following lengths of time:

(a)  When such absence is a result of disability or illness – ninety (90) days;

(b)  When such absence is a result of a leave of absence requested by the Employee and granted by the Employer – the date following the expiration of the approved leave of absence;

(c)  When such absence is a result of an on-the-job injury for which the Employee has been awarded Workers' Compensation Insurance Benefits – one hundred eighty (180) days.

## COLLECTIVE BARGAINING AGREEMENT

### ARTICLE XIII
# Check Off & Teamster Drive

**1**  Each Employer shall, on or about the first (1st) day of each month, deduct from the wages of each Employee covered by this Agreement, the monthly Union dues thereof and forward such deductions, by mail, to the office of the Union and identify with such deductions the names of the Employees and their ledger numbers provided that the Employer has received from each Employee on whose account such deductions were made, a written assignment on a form prepared by the Union which shall not be irrevocable for a period of more than one (1) year or beyond the termination date of this Agreement, whichever occurs sooner. The phrase "Union Dues" shall include initiation fees and regular dues provided for by rule, by-law or constitution of the Union. It shall be a violation of this Agreement to make such deductions and payment on behalf of any Employees not actually employed by the Employer.

**2**  If an Employee shall be on a paid vacation leave during the regular monthly Union dues check off period, the Employer shall deduct the monthly dues for such Employees immediately before or after such period and forward them to the Union office.

**3**  If an Employer fails to pay the monthly Union Dues within ten (10) days of the date when deducted, a late penalty of interest at the rate of 1½% per month shall be imposed until payment is made.

**4**  The Employer agrees to deduct from the pay check of all Employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing Employee that are to be deducted from his/her pay check on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which Employee has earned a wage. The Employer shall transmit to DRIVE National Headquarters on a monthly basis, in one check, the total amount deducted along with the name of each Employee on whose behalf a deduction is made, the Employee's social security number and the amount deducted from the Employee's pay check. The International

## GARAGE EMPLOYEES LOCAL 272

5. Brotherhood of Teamsters shall reimburse the Employer annually for the Employer's actual cost for the expenses incurred in administering the weekly payroll deduction plan.

It is specifically agreed that the Employer assumes no obligations, financial or otherwise except those stated in this Article, arising out of the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Employer harmless for any claims, actions or proceedings by any Employee or government agency arising from authorized deductions made by the Employer hereunder pursuant to written agreement. Once the checked off dues are remitted to the Union, their disposition thereafter shall be the sole and exclusive prerogative and responsibility of the Union.

### ARTICLE XIV
# Wages

1. (a) "A" Level Employee(s) shall mean all present Employees for whom contributions were made to the Pension Plan (as referred to in Article XXII hereof) at any time during the thirty-six (36) months preceding February 6, 1989.

(b) The minimum wage scale for all "A" Level Employees is set forth in Appendix A to this Agreement.

2. (a) All Employees on the payroll of an Employer as of March 6, 2004 who have been employed by that Employer for at least six (6) months shall receive a lump sum payment of $550.00 no later than April 15, 2004. All Employees on the payroll of an Employer as of March 6, 2004 who have been employed for less than six (6) months shall receive a lump sum payment of $550.00 when they have been employed by the Employer for six (6) months.

(b) All Employees shall receive wage increases as follows:

| | | |
|---|---|---|
| March 7, 2005 | - | $.25 per hour |
| March 6, 2006 | - | $.25 per hour |
| March 5, 2007 | - | $.25 per hour |
| March 3, 2008 | - | $.25 per hour |

## COLLECTIVE BARGAINING AGREEMENT

3. (a) The hiring rate for Employees hired on or after March 6, 2004 shall be $6.00 per hour.

4. For purposes of computing overtime, premium pay and Welfare & Pension Fund Contributions, all hours of an Employee in a work week shall be deemed to have been performed for one (1) Employer where the Employer is a multiple unit or chain operation controlled or managed by the same person, group or stockholders.

5. There shall be no reduction in the wages of any "A" Level Employee who is presently receiving or who has heretofore received wages in excess of those set forth in Appendix A. In the event any such Employee has been or is receiving such wages in excess of those set forth, this Agreement shall be deemed modified by the parties with respect to such Employee to provide that wages for that Employee shall be the wages he/she is presently receiving or heretofore received.

6. Each Employee shall be paid on each pay day in full for all regular time and overtime worked. All Employees will be paid on the Employer's time and on the Employer's property. Part-time Employees shall be paid in full no later than the pay day of the Employer's next pay period.

7. Employees who perform the work in a category of employment which receives wages higher than his/her category, as set forth in Appendix A, as applicable, shall be paid such higher wages for such work.

8. If the Federal Government institutes wage controls in any form and a portion of the Agreement is deferred or cut back, the parties shall meet promptly to attempt to allocate the monetary equivalent of the disapproved wages or benefits in a manner that would result in government approval. If the monetary equivalent of the deferred or cut back portion cannot be reallocated, the Employer will pay the amount directly attributable to the deferment or cut back to the affected Employee when legally permissible.

## GARAGE EMPLOYEES LOCAL 272

### ARTICLE XV
# Hours and Overtime

**1**

(a) A work week shall consist of five (5) days and/or nights aggregating forty (40) hours, or of four (4) days and/or nights aggregating forty (40) hours, to consist of a workshift of, respectively, eight (8) or ten (10) consecutive hours exclusive of any unpaid meal period.

(b) An Employee's regular work week, workshifts and days off shall not be changed without one week's prior notice except in emergency circumstances. Except for Working Managers or Foremen, such schedule changes shall be posted and Employees shall have forty-eight (48) hours within which to express in writing their shift choice by seniority. Reasonable changes in starting and quitting times shall not constitute a schedule change for bidding purposes.

(c) Except for Part-Time Employees and steady relief Employees, the interval between the end of an Employee's regularly scheduled work shift and the beginning of the Employee's next regularly scheduled work shift shall not be less than the number of hours in the scheduled work shift prior to the interval.

**2**

(a) A work schedule providing for non-consecutive two (2) days off during the work week is permitted where the nature of the operation of a particular Employer does not permit consecutive days off.

(b) Where the nature of the operation of a particular Employer requires, split shifts may be scheduled for Employees hired after March 6, 1995 or for Employees already working a split shift as of March 6, 1995. Employees working a split shift shall be guaranteed eight (8) hours work or pay. Split shifts shall be Posted and bid in accordance with seniority. If no Employee bids, the Employer may assign eligible Employees to split shifts in inverse order of seniority.

(c) Except for steady relief of Employees and Employees regularly assigned to more than two (2) locations, split assignments to more than two (2) locations in a work week may be required of any Employee, with due regard for seniority, where the nature of

22

## COLLECTIVE BARGAINING AGREEMENT

the operation of a particular Employer so requires. Travel time between assignments to separate locations during the same shift shall be compensated as working time.

**3**  Whenever an Employee works in excess of forty (40) hours in any work week, such excess shall be overtime and shall be paid for at the rate of time and one-half (1½ times) the Employee's regular hourly rate. Employees are required to work a reasonable amount of scheduled overtime, and, in emergency circumstances, of unscheduled overtime. An Employee who works in excess of his/her scheduled hours in a day shall not have an involuntary reduction in scheduled hours on another day during that week.

**4**  Payments for overtime and vacation and benefit days shall all be paid in cash or check and compensation for same shall never be made by granting time-off.

### ARTICLE XVI
# Vacation and Benefit Days

**1**

(a) Subject to Paragraph 5 hereof, Full-Time Employees shall be entitled to days of vacation as follows:

   (i) Five (5) days per year during each of the first two (2) years of employment;

   (ii) Ten (10) days per year during each of the third (3rd) through fifth (5th) years of employment;

   (iii) Fifteen (15) days per year during each of the sixth (6th) through tenth (10th) years of employment; and

   (iv) Twenty (20) days during the eleventh (11th) and each succeeding year of employment.

(b) Subject to Paragraph 5 hereof, Full-Time Employees shall be entitled to benefit days as follows:

   (i) Six (6) days per year during each of the first (1st) through fifth (5th) years of employment; and

23

# GARAGE EMPLOYEES LOCAL 272

(ii) Twelve (12) days per year during the sixth (6th) and each succeeding year of employment.

**2** Part-Time Employees shall earn a pro rata share of a Full-Time Employee's vacation and benefit days. Employees who are regularly scheduled to work and work sixteen (16) or fewer hours per week shall not earn vacation and benefit days.

**3** A vacation or benefit day shall mean eight (8) hours' pay at an Employee's then current straight time rate of pay.

**4** Each Employee shall be entitled to be paid for his unused vacation and benefit days on the anniversary date of his employment unless the Employee elects to defer payment to a date no later than the time the Employee takes vacation.

**5** (a) An Employee's vacation and benefit days shall be earned on a pro rata basis during an Employee's anniversary year of employment. Such pro rata vacation or benefit days shall be taken on an accrued full-day basis only. The taking of or payment for partial vacation or benefit days shall not be permitted.

(b) Notwithstanding the provisions of this Paragraph 5, during his first (1st) anniversary year of employment an Employee shall not be entitled to receive payment for any vacation or benefit days during the first six (6) full months of said first (1st) anniversary year of employment. Following the completion of an Employee's first six (6) months of employment he shall be entitled to use accrued vacation or benefit days as provided in Paragraph 5 (a) hereinabove.

(c) (i) No Employee shall be required by his Employer to work through his vacation.

(ii) Without the prior consent of his Employer, no Employee shall be permitted to work during his said vacation.

(iii) Said vacation must be taken during the anniversary year of employment immediately following the anniversary year of employment during which it was earned.

(d) Vacations shall be scheduled during the period commencing May 1st and ending October 31st and at other times the Employer deems to be convenient.

**24**

# COLLECTIVE BARGAINING AGREEMENT

(i) During the period from January 1st through March 31st of each calendar year, Employers shall ask their Employees to choose their vacation periods during said calendar year.

(ii) Employees shall notify their Employers of their choice for vacation dates no later than April 30th of each calendar year.

(iii) Schedule of vacations shall be fixed by the Employer in accordance with Employee's company seniority. Should any differences arise among Employees concerning vacation periods, Employees having greater company seniority shall have preference in selection of vacation periods.

(iv) The number of Employees granted vacation at any one time shall be determined solely by the Employer.

(v) An Employee who has not indicated his choice of vacation time may be assigned a vacation by his Employer from available dates remaining.

(vi) The Employer reserves the right to change vacation dates in those cases where such change is necessary to the basic operation of its business. In exercising such right, the Employer shall make such change in reverse seniority order and on no less than thirty (30) days notice unless impossible to do so.

(vii) Employees entitled to either three (3) or four (4) weeks vacation may not schedule more than two (2) weeks consecutively without the consent of the Employer.

**6** All Employees shall be available for regularly scheduled work which falls on any holiday. In the event an Employee is permitted or required by his Employer to take the day off for any holiday, upon his request, such Employee shall be entitled to be paid for one (1) accrued vacation or benefit day for such scheduled but non-worked holiday. If the Employee works the holiday, the Employee shall be entitled, at the Employee's option, to be paid for one (1) accrued vacation or benefit day in addition to the pay for hours worked on such day.

**7** When an Employee is absent because of sickness, and upon his request, he will be entitled to be paid for one (1) accrued vacation or benefit day for each such day of absence.

**25**

## COLLECTIVE BARGAINING AGREEMENT

### ARTICLE XVIII

# Protection of Rights and Strikes and Prohibitions

1. There shall be no strikes, work stoppages, slowdowns, picketing, sit-downs, boycotting, or any other concerted interruption or interference with the operations of the Employer, or lockout of Employees by the Employer, for any reason whatsoever, for the duration of this Agreement, it being the intent and purpose of the parties hereto that every dispute or controversy of any matter which may arise between the Union or any Employees and an Employer or the Association, except as otherwise provided herein, shall be disposed of by arbitration as hereinafter provided.

2. The Union, its officers, agents, representatives and members, shall not in any way, directly or indirectly, authorize, assist, encourage, participate in or sanction any strike, work stoppage, slowdown, sit-down, boycott, or any other concerted interruption or interference with the operations of the Employer, or ratify, condone or lend support to any such conduct or action, including honoring or recognizing any strike, picket line or picketing in any form at any Employer location covered by this Agreement by any Union not a party to this Agreement, except in connection with such action as is established or sanctioned by the International Brotherhood of Teamsters.

3. It shall not be a violation of this Agreement and it shall not be cause for discharge or disciplinary action if any Employee exercises any right protected by statute or by the terms of this Agreement or this Article in particular.

### ARTICLE XIX

# Discipline

1. After the first sixty (60) days of employment, no Employee may be disciplined except for just cause.  Just cause may include the following:

## GARAGE EMPLOYEES LOCAL 272

8. An Employee who is permitted by his Employer to take a day off on a regularly scheduled workday shall, upon his request, be entitled to be paid for one (1) accrued vacation or benefit day for such day of absence.

9. All permanent Employees shall be given three (3) work days off with pay in the event of the death of a spouse, child, stepchild, parent, grandparent, brother, sister, brother or sister-in-law, or father or mother-in-law.  Such Employee shall receive his/her straight time wage for such day upon presentation of appropriate certified or authenticated death certificate and an affidavit setting forth his/her relationship to the decedent if not set forth in the death certificate.

### ARTICLE XVII

# Job Classification and Duties

1. The duties of the Employees shall be as follows:

(a) The duties of Washers shall be to perform any and all work required of them by their Employer during their working hours in the operation and conduct of such Employer's Parking Facility, which duties shall include the washing and cleaning of motor vehicles.

(b) The duties of all other Employees (Floormen and Transporters) shall be the same as those required of Washers, except that such workers shall not be required to wash or grease motor vehicles.

(c) The duties of Working Foremen or Working Managers shall be to perform any and all services required of them to ensure the efficient operation of the particular units in which they are employed, including the duties required of a Floorman. (Neither Working Foremen nor Working Managers nor Transporters shall at any time be required to wash or grease motor vehicles).

(d) The duties of Cashiers shall include the collection and safekeeping of monies received for and on behalf of the Employer in the operation of its business and record-keeping in relation thereto.

A. Habitual lateness.

B. Habitual absence.

C. Use or possession of alcohol or controlled substances on duty or being under the influence thereof while on duty.

D. Negligent damage of vehicles, Employer's property or equipment.

E. Refusal to obey order of superior or breach of Employer work rules.

F. Abuse of or discourtesy to customers.

G. Incompetence to perform duties.

H. Unsuitability that hinders performance under this Agreement of the efficient operation of the Parking Facility within which the Employee is employed.



I. Theft or conduct jeopardizing the safety of an Employee or others.

J. Material misrepresentation of fact on employment application.

2. Any Employee discharged must be paid in full for all wages owed to the Employee by the Employer, including earned vacation and benefit days, if any, within the normal pay period of the Employer.

3. (a) In any cases involving the discharge or suspension of any Employee, the Employer must promptly notify the Union and the Employee in writing of the discharge or suspension and the reason thereof. Any discipline may be referred to the grievance machinery as set forth in Article XX hereof.

(b) No employee shall be discharged for reasons stated in Paragraph 1, Subdivisions A, B, D, G and H unless the Employer shall have given the Union at least one (1) prior warning notice of the specific complaint against the Employee except in the case of gross or habitual negligence under (D). Warning notices shall be retained in an Employee's file for one (1) year from the date of the infraction, except for warning notices related to lateness and absenteeism which shall be retained in an Employee's file for two (2) years from the date of the warning. After the expiration of

the one (1) year or two (2) year period, respectively, the warning notice(s) shall be removed from the Employee's file.

4. The Employer shall not require, request or suggest that an Employee or applicant for employment take a polygraph or any other form of lie detector test.

## ARTICLE XX

# Grievance and Arbitration Procedure

1. If a dispute, claim, grievance, or difference shall arise between the Union and Employer about the interpretation or application of a particular clause of this Agreement or about an alleged violation of a particular provision of this Agreement (such dispute, claim, grievance, or difference is hereinafter referred to as a "grievance"), such grievance shall be handled as follows:

(a) ]The party asserting the grievance must submit the grievance, in writing, to the other party within ten (10) calendar days (i) after the occurrence of the incident or event giving rise to the grievance; or (ii) the date the Employee, with reasonable diligence, should have known of the grievance.

(b) The Union and the Employer and/or the Association shall meet at the Union office within fifteen (15) calendar days of the date on which the grievance was submitted. In the event the Employer fails to appear for a scheduled meeting without prior notice to the Union, this step shall be deemed waived and the grievance may be submitted directly to arbitration. Additionally, in the event an Employer cancels, or fails to appear for, two (2) scheduled meetings, this step shall be deemed waived and the grievance may be submitted directly to arbitration.

2. (a) In the event the Union and the Employer and/or the Association fail to meet in a timely manner or meet and fail to resolve the grievance within twenty (20) calendar days of the date the griev-

ance was submitted, either party may submit the grievance to arbitration no later than forty-five (45) calendar days after the grievance was submitted.

(b) The arbitrator shall be selected either (i) by mutual agreement between the parties; or (ii) pursuant to the rules and regulations of the American Arbitration Association. Upon the submission of a grievance to arbitration, the arbitrator shall give the parties an opportunity to be heard and to offer evidence with respect to such dispute. After such hearing, the arbitrator shall as promptly as possible, decide the aforesaid grievance. Such decisions shall be final and binding upon the parties thereto, all of which agree to abide by such decision. The arbitrator's fees and any AAA fees shall be paid by the Union and Employer in equal shares and all other expenses shall be borne solely by the parties incurring such costs or expenses.

3  The failure of the party asserting a grievance to follow this grievance procedure, within the times specified above, shall unless consented to in writing by the other party, be deemed abandonment of the grievance. It is the intent of this provision that all grievances shall be taken up and disposed of promptly and that, unless taken up and followed up promptly, shall be considered abandoned by the party asserting such grievance. In no event shall the arbitrator have authority to issue an award, judgment, decision or order which is inconsistent with the express provisions of this Article.

### ARTICLE XXI
# Welfare Benefits

1  The parties shall maintain and continue the Welfare and Insurance Plan ("Welfare Plan") for the benefit of the employees which Plan shall be operated and supervised by a Board of Trustees composed of an equal number of representatives of the Association and of the Union all in accordance with the Amended Agreement and Declaration of Trust for the Local 272 Welfare Fund dated October 22, 1964, as presently constituted or as the same may be hereafter amended.

2

(a) Each Employer shall make Welfare Contributions of $1.28 per hour after the Employee has been employed for six (6) months.

(b) In the event that the actuaries to the Fund determine at the beginning of any Fund fiscal year that during that fiscal year the surplus in the Fund will be an amount that is less than the equivalent of three (3) months of benefit payments, the Trustees shall be authorized to increase the required contribution rate to the Fund, provided that (1) such authority is limited to a total increase in the contribution rate during the term of this Agreement of ten cents ($.10) per hour and (2) in the event that more than ten cents ($.10) per hour is required, the Trustees may require further contributions as necessary to maintain existing benefits and a surplus equal to three (3) months of benefit payment unless the Association, within thirty (30) days after written notice from the Trustees to the Association of the need to further increase the contribution rate, reopens the agreement for the limited purpose of negotiations on additional contribution rate increases.

(c) For the purpose of the waiting period prior to the obligation to contribute in paragraph 2 (a) above, the full waiting period shall be applicable to any Employee who has not worked in covered employment for another Employer subject to a collective bargaining agreement with Local 272 during the prior twelve (12) months. In the case of an Employee who had been so employed, the waiting period for the new Employer shall be reduced by the period of time the Employee has been employed by the predecessor Employer(s).

3  Contributions to the Welfare Plan (herein "Welfare Contributions") shall be made for all hours for which an Employee is required to be paid by the terms hereof, including vacation and benefit days, provided that such contribution shall not be required for more than forty (40) hours per week, and not in excess of fifty two (52) weeks in any year for an Employee. A multiple Employer or chain operator shall be deemed to be one (1) Employer for the purpose of the preceding limitation.

4

(a) All required Welfare Contributions shall be made monthly and each Employer shall furnish the Trustees of the Welfare Plan with

a written report which shall include an enrollment card for all new Employees, and a list of all Employees whose employment terminated during the preceding month.

(b) In no event shall the benefits of the present Welfare Plan, or their equivalent, be denied to covered Employees during the term of this Agreement.

**5** The Employer shall provide such reports with the required contributions within twenty (20) days after the first (1st) day of each month and shall be considered in default on the twenty-first (21st) day of said month.

**6** Each Employer shall make available to the Trustees of the Plan, or their duly authorized agents, such payroll and other records of such Employer as may be pertinent or helpful to the carrying on by the Trustees of their duties. In the event an audit of such payroll or other records of any Employer reveals a deficiency or default in payment, such Employer may be assessed the cost of such audit in such reasonable amount as the Trustees or Arbitrators may determine.

**7** In the event of the institution against an Employer in default of a law suit or arbitration or other proceeding to recover any amount due Welfare Contributions under the terms hereof, wherein it is determined by settlement or decision, judgment or otherwise that such an amount was due and unpaid, in addition to such amount so determined, the Employer may be assessed and shall pay an additional sum equal to the reasonable value of the services employed for instituting, maintaining and/or concluding such proceeding, not to exceed in any case twenty (20%) percent of the amount so determined to be due by the Board of Trustees.

**8** If an Employer fails to pay Welfare Contributions when due, a late penalty of interest at the rate of one and one-half percent (1½%) per month shall be imposed from the first day of the month following the month for which such contributions should have been made until payment is made.

## ARTICLE XXII

# Pension & Retirement Plan

**1** The parties shall maintain and continue the Labor-Management Pension Plan ("Pension Plan") for the benefit of Employees, which Pension Plan shall be operated and supervised by a Board of Trustees composed of an equal number of representatives of the Association and the Union all in accordance with the Local 272 Labor-Management Pension Plan, as presently constituted or as the same may be hereafter amended.

**2** (a) Each Employer shall make Pension contributions of $.79 per hour after an Employee has been employed for (3) years. Effective October 1, 2004, each Employer shall make Pension Contributions of $.89 per hour after an Employee has been employed for (3) years.

(b) For the purpose of the waiting period prior to the obligation to contribute under paragraph 2 (a) above, the full waiting period shall be applicable to any Employee who has not worked in covered employment for another Employer subject to a collective bargaining agreement with Local 272 during the prior twelve (12) months. In the case of an Employee who had been so employed, the waiting period for the new Employee shall be reduced by the period of time the Employee has been employed by the predecessor Employer(s).

(c) The Union and the Association agree to recommend to the Trustees of the Pension Plan that the monthly benefit per pension credit be increased to $37.50 and that the maximum regular monthly pension be increased to $750 for employees retiring on or after Marcy 6, 2004. Contingent upon certification by the Pension Fund's actuary that pension benefits can be increased without incurring a negative margin (deficit), the maximum benefit shall be increased to $775 and the monthly benefit per pension credit shall be increased to $38.75 for employees retiring on or after March 6, 2006 or as soon thereafter as possible.

3  Contributions to the Pension Plan (herein "Pension Contributions") shall be made for all hours for which an Employee is required to be paid by the terms hereof, including vacation and benefit days, provided that such contribution shall not be required for more than forty (40) hours per week, and not in excess of fifty two (52) weeks in any year for an Employee. A multiple Employer or chain operator shall be deemed to be one (1) Employer for the purpose of the preceding limitation.

4  (a)  All required Pension Contributions shall be made monthly and each Employer shall furnish the Trustees of the Pension Plan with a written report which shall include an enrollment card for all new Employees and a list of all Employees whose employment terminated during the preceding month.

(b)  In no event shall the benefits of the present Pension Plan, or their equivalent, be denied to covered Employees during the term of this Agreement.

5  The Employer shall provide such reports with the required contributions within twenty (20) days after the first (1st) day of each month and shall be considered in default on the twenty-first (21st) day of said month.

6  Each Employer shall make available to the Trustees of the Pension Plan, or their duly authorized agents, such payroll and other records of such Employer as may be pertinent or helpful to the carrying on by the Trustees of their duties. In the event an audit of such payroll or other records of any Employer reveals a deficiency or default in payment, such Employer may be assessed the cost of such audit in such reasonable amount as the Trustees or Arbitrators may determine.

7  In the event of the institution, against an Employer in default, of a lawsuit or arbitration or other proceeding to recover an amount due for Pension Contributions under the terms hereof, wherein it is determined by settlement, decision, judgment or otherwise that such an amount was due and unpaid, in addition to such amount so determined, the Employer may be assessed and shall pay an additional sum equal to the reasonable value of the services employed for instituting, maintaining and/or concluding such proceeding, not to

exceed in any case twenty (20%) percent of the amount so determined to be due by the Board of Trustees.

8  If an Employer fails to pay Pension contributions when due, a late penalty of interest at the rate of one and one-half percent (1½%) per month shall be imposed from the first (1st) day of the month following the month for which such contributions should have been made until payment is made.

## ARTICLE XXII

# Management Rights

1  Subject to and limited by the provisions of this Agreement, the Employer shall have the exclusive right to direct and control its Employees in connection with their employment duties including, but not limited to, the right to hire, train, promote, transfer, demote, discipline, lay off, assign work, combine jobs, schedule days and hours and working shifts to introduce new or improved methods or facilities, to transfer, merge or combine all or any part of the Employer's operations and to, in all respects, carry out the ordinary and customary functions of management.

2  The Employer may implement, continue and change such reasonable and necessary rules and regulations not inconsistent with the provisions of this Agreement as it deems necessary and proper for the conduct of its business. The content (but not the application) of such rules and regulations shall not be subject to challenge under Article XX (Arbitrations) of this Agreement, except as manifestly unreasonable or clearly unnecessary.

3  The list of rights set forth herein and the provisions of this Article are not intended to be nor shall be construed as a restriction or waiver of any rights or entitlements of any party to this Agreement, whether or not previously exercised.

## ARTICLE XXIV
# General Provisions

1. Title of Articles are inserted for general reference purposes. All provisions of this Agreement are binding upon the parties hereto whether the same are under properly descriptive titles or not, and in the event of discrepancies between the title of any Article and the provisions of any Article, the terms of the provision shall control.

2. To the best knowledge and belief of the parties, this Agreement contains no provisions contrary to Federal, State or local law, rule or regulation. However, should any provision of this Agreement now or hereafter be held to be in conflict with any Federal, State or local law, rule or regulation, such provision shall continue in effect only to the extent permitted and the remaining provisions of the Agreement shall nevertheless remain in full force and effect.

3. In the event that any provision in this Agreement be, or is held to be, invalid under the laws of any state wherein the same is required to be carried out, the provision shall be deemed to be modified to comply with the requirements of such state law. It shall also be renegotiated for the purpose of adequate replacement. If such negotiations shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal or economic recourse.

## ARTICLE XXV
# Non-Discrimination Clause

1. The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment in any manner prohibited by any Federal, State or local law including, but not limited to, discrimination resulting in deprivation of employment opportunity because of race, color, religion, sex, national origin, age, sexual orientation or affectional preference.

2. The Employer and the Union agree that there will be no discrimination by the Employer or the Union against any Employee because of

his/her membership in the Union or because of any Employee's lawful activity and/or support of the Union.

## ARTICLE XXVI
# Duration

1. Except as otherwise specifically indicated, this Agreement shall remain in full force and effect from 12:00 A.M. on March 6, 2004 through 11:59 P.M. on March 5, 2009.

2. In the event that either party should desire to terminate or modify this Agreement at this expiration date, it shall give notice to the other party in writing at least sixty (60) days prior to the expiration date thereof and negotiations for a new agreement shall commence as soon thereafter as is practicable.

3. No sale, lease, transfer, or disposal by claim or assignment of any units of the Employer, in whole or in part, at the expiration or during the negotiation or renewal of this Agreement, shall alter or change the job classification or number of Employees within the unit so sold, leased, transferred or otherwise disposed of.

4. All changes agreed upon in any new agreement shall be retroactive and effective as of the expiration date of this Agreement or any renewal thereof.

**COLLECTIVE BARGAINING AGREEMENT**

## APPENDIX A

### MINIMUM "A" LEVEL RATES

| | | 3/7/05 | 3/6/06 | 3/5/07 | 3/4/08 |
|---|---|---|---|---|---|
| Floormen & Transporters | Weekly | $562.40 | $572.40 | $582.40 | $592.40 |
| | Daily | 112.48 | 114.48 | 116.48 | 118.48 |
| | Hourly | 14.06 | 14.31 | 14.56 | 14.81 |
| | O/T | 21.09 | 21.465 | 21.84 | 22.215 |
| Washers | Weekly | $570.00 | $580.00 | $590.00 | $600.00 |
| | Daily | 114.00 | 114.00 | 114.00 | 114.00 |
| | Hourly | 14.25 | 14.50 | 14.75 | 15.00 |
| | O/T | 21.375 | 21.75 | 22.125 | 22.50 |
| Working Foremen or Working Managers | Weekly | $577.60 | $587.60 | $597.60 | $607.60 |
| | Daily | 115.52 | 117.52 | 119.52 | 121.52 |
| | Hourly | 14.44 | 14.69 | 14.94 | 15.19 |
| | O/T | 21.66 | 22.035 | 22.51 | 22.785 |
| Cashiers | Weekly | $515.20 | $525.20 | $535.20 | $545.20 |
| | Daily | 103.04 | 105.04 | 107.04 | 109.04 |
| | Hourly | 12.88 | 13.13 | 13.38 | 13.63 |
| | O/T | 19.32 | 19.695 | 20.07 | 20.445 |

Extras - Day or Night

| | 3/7/05 | 3/6/06 | 3/5/07 | 3/4/08 |
|---|---|---|---|---|
| Floormen & Transporters | $113.92 | $115.92 | $117.92 | $119.92 |
| Washers | 115.02 | 117.02 | 119.02 | 121.02 |
| Working Foremen or Working Managers | 116.54 | 118.54 | 120.54 | 122.54 |
| Cashiers | 104.04 | 106.04 | 108.04 | 110.04 |

**39**

---

**GARAGE EMPLOYEES LOCAL 272**

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands and seals and caused this Agreement to be duly executed.



METROPOLITAN PARKING ASSOCIATION, INC.

By: _____ Joel Stahl, Executive Director

GARAGE EMPLOYEES UNION NO. 272,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO

By: _____ Eddie Allers, Secretary/Treasurer

By: _____ Fred Alston, President

GARAGE EMPLOYEES UNION LOCAL NO. 272
220 East 23rd Street, 8th Floor
New York, New York
(212) 726-9726

PENSION & WELFARE OFFICE
220 East 23rd Street, 8th Floor
New York, New York
(212) 726-9726

METROPOLITAN PARKING ASSOCIATION, INC.
299 Broadway, Room 403
New York, New York 10007
(212) 406-3590

**38**